## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEWOBESTA FESSEHA TESFAYE, *et al.*, <br>       Plaintiffs, <br>      v. <br> ANTONY J. BLINKEN, *et al.*, <br>       Defendants. | Civil Action No. 22-411 (CKK) |

### MEMORANDUM OPINION
(September 28, 2022)

Plaintiffs in this action are selectees of the Diversity Visa Lottery for the 2022 fiscal year. By statute, their eligibility to receive diversity visas expires on September 30, 2022. Pending before the Court is a [31] Motion for a Temporary Restraining filed by Plaintiffs Abd Elrahman Abdin Elfaki Abdllatif, Yoousra Hussein Yousif Ali, O.A.E., D.A.E., A.A.E., and H.A.E ("Plaintiffs") on September 23, 2022. Plaintiffs were interviewed by a consular officer at the United States Embassy in Khartoum, Sudan on August 9, 2022 and subsequently received notice that their diversity visa petitions were "refused" under INA § 221(g). Based on the record presently before the Court, Plaintiffs' application remains in "administrative processing." Plaintiffs seek an order compelling Defendants to process their visa application and/or preserve visas past the September 30 deadline.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** Plaintiffs' [31] Motion for Temporary Restraining Order.

---

[1] The Court's consideration has focused on the following: Plaintiffs' Motion for Temporary Restraining Order ("Pls.' TRO Mot."), ECF No. 31; Defendants' Opposition to Plaintiffs' Motion for a TRO ("Defs.' Opp'n"), ECF No. 32; and Reply in Support of Plaintiffs' Motion for TRO ("Pls.' Reply"), ECF No. 34. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

## I.   BACKGROUND

### A.  The Diversity Visa Program

Under the Immigration and Nationality Act ("INA"), "Congress has provided for up to 55,000 immigrant diversity visas to be distributed each fiscal year to foreign nationals that hail from countries with historically low levels of immigration to the United States."[2] *Filazapovich v. Dep't of State*, No. 21-cv-943 (APM), 2021 WL 4127726, at *2 (D.D.C. Sept. 9, 2021) (citing 8 U.S.C. §§ 1151(e), 1153(c)).  "Millions of hopefuls enter a lottery for the chance to apply for one of the 55,000 allotted diversity visas."  *Id.*  (citing *Gomez v. Trump* (*"Gomez I"*), 485 F. Supp. 3d 145, 159 (D.D.C. 2020)). The selectees of the lottery "submit an application and various documents to be eligible for a visa number," which can be used only during the fiscal year for which the selectee applied.  *Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019).

Demand for diversity visas "regularly outstrips supply."  *Gomez I*, 485 F. Supp. 3d at 159; *see also P.K. v. Tillerson*, 302 F. Supp. 3d 1, 3 (D.D.C. 2017) ("Millions of people enter the lottery every year.").  Moreover, the "total number of lottery selectees exceeds the statutory numerical limit of visas" allocated to the DV program because if the Department "did not over select DV participants, it would not be able to use the full allocation of DV numbers."  Declaration of Morgan Miles ("Miles Decl.") ¶ 5, ECF No. 11-2.  "Those selected for the [diversity visa] program are not guaranteed a visa—only the opportunity to apply for one."  *P.K.*, 302 F. Supp. 3d at 3.  According to Defendants, 63,753 people were selected from the Fiscal Year 2022 Diversity Visa ("DV-2022") lottery, accounting for 118,513 diversity visa applicants (including selectees' spouses and

---

[2] *See Babamuradova v. Blinken*, Civ. Action Nos. 22-1460, 22-1990, 22-2428 (JDB), 2022 U.S. Dist. LEXIS 174311, at *1–2 (D.D.C. Sept. 27, 2022) ("A number of those are reserved for use under a separate program (established by the Nicaraguan and Central American Relief Act), so the State Department estimates that only 54,850 diversity visas will actually be available this year." ).

children) seeking one of approximately 55,000 available visas.  Miles Decl. ¶ 4, ECF No. 11-2. As of September 25, 2022, the Department of State has issued 50,500 immigrant visas to diversity visa applicants for the FY-2022 diversity visa program and USCIS has used 1,440 diversity visa numbers for "adjustment of status."  Declaration of Brenda Grewe ("Grewe Decl.") ¶ 2, ECF No. 32-1.

The Kentucky Consular Center ("KCC") selects DV lottery applicants using a random number system which generates "rank order number[s]" broken down into six geographic regions." *See* 9 FAM § 502.6-4(c)(2)(a)–(b). "Within each region, the first entry randomly selected will have a rank order number 00000001, the second entry selected will be 00000002, etc." *Id.* § 502.6-4(c)(2)(b). Lottery selectees are required to submit a form DS-260 to the KCC. 9 FAM § 502.6-4(d)(1)(a).  Once applicants submit a completed DS-260, then "[o]rdinarily . . . the case will be 'documentarily qualified' for purposes of visa appointment scheduling."  *Id.* § 502.6-4(d)(1)(b).[3]  "[T]he fact than an applicant is 'documentarily qualified' does not alone make him or her eligible to schedule an interview: the applicant's regional lottery rank number must also be 'within the applicable rank cut-off for that month.'" *Babamuradova*, 2022 U.S. Dist. LEXIS 174311, at *3–4 (quoting 9 FAM § 502.6-4(c)(2)(c)).  Under current guidance, implemented in mid-February 2022, KCC will "schedule an appointment for applicants that have completed

---

[3] Prior to December 2021, applicants were required to submit supporting documentation with their DS-260.  *See id.* § 502.6-4(d)(1)(b).  However, updated guidance issued by the State Department in December 2021 revised that requirement; DV-2022 selectees were no longer required to submit to the KCC required supporting documents for DV-2022 to be eligible for an interview.  *See Dehghanighanatghestani v. Mesquita*, Civil Action No. 22-2595 (CKK), 2022 WL 4379061, at *2 (D.D.C. Sept. 22, 2022).  Rather, "selectees will submit all required supporting documents to the designated interviewing post, which will evaluate the documents."  *Id.*  (internal citations and quotation marks omitted).

processing at KCC around the time their regional program rank number is current." 9 FAM § 502.6-4(d)(2)

When an applicant's documents have been submitted and KCC has completed processing them, the case is "reported to the Visa Office," which "allocates a visa number," making the case eligible to be scheduled" for an interview *Babamuradova*, 2022 U.S. Dist. LEXIS 174311, at \*5. "[T]he availability of interview appointments may depend on the available resources and competing demands of consulates in an applicant's country of residence." *Gjoci v. Dep't of State*, Case No. 21-cv-294-RCL, 2021 WL 3912143, at \*2 (D.D.C. Sept. 1, 2021); *see also* Miles Decl. ¶ 10, ECF No. 11-2 (explaining that each post has a "separate processing queue"). The schedule for interviews is "not solely dependent on the regional rank order assigned to an applicant. Within each region, there are a number of posts, each with their own schedule and capacity. An applicant with a lower regional rank number could nonetheless be scheduled for an interview after a higher-numbered applicant if, say, the processing of their documents was completed later (either due to the applicant's delay or issues with the documents submitted) or if the post to which they are assigned has more applicants or schedules interviews more slowly than a different post (even one within the same region)." *Babamuradova*, 2022 U.S. Dist. LEXIS 174311, at \*5.

All diversity visa applications must be reviewed and adjudicated by a consular officer. *See* 8 U.S.C. § 1202(b). "Because the diversity visa program restarts each fiscal year, consular officers may not issue diversity visas after midnight on September 30 of the [fiscal year]." *Almaqrami*, 933 F.3d at 777. As a result, "[i]f the selectee does not receive a visa by the end of the fiscal year . . . he is out of luck[.]" *Gomez I*, 485 F. Supp. 3d at 159.

## B.  Factual Background

Plaintiff Abd Elrahman Abdin Elfaki Abdllatif is a national of Sudan and a selectee of the 2022 diversity visa lottery. Compl. ¶ 39.  Plaintiffs Yoousra Hussein Yousif Ali, O.A.E., D.A.E., A.A.E., and H.A.E are Plaintiff Abdllatif's derivative beneficiaries.  *Id.* ¶ 40.

On August 9, 2022, Plaintiffs were interviewed by the Consular Section of the U.S. Embassy in Khartoum.  Pls.' TRO Mot. Ex. A, 2NL Interview Notice.  According to Plaintiffs, they were notified that their diversity visa application had been refused under Section 221(g).  Pls.' Reply at 8 ("Plaintiffs were refused under INA 221(g) for Administrative Processing.").  Plaintiffs indicate that they were given a questionnaire to which they promptly responded.  Declaration of Abd Elrahman Abdin Elfaki Abdllatif ("Abdllatif Decl.") ¶¶ 20–26, ECF No. 31-5.  The questionnaire directs Plaintiffs to provide additional information regarding their travel history, family members, recent addresses, and recent phone numbers.  *See* Pls.' TRO Mot. Ex. B, ECF No. 31-3.  They have not provided any evidence of their responses to these questions or the timing of these responses to the consulate.

According to Plaintiffs, the "status" of their applications on the State Department website shows that their case was "Refused" for "administrative processing" and that it will "remain refused while undergoing such processing [and] will receive another adjudication once such processing is complete." Pls.' TRO Mot. Ex. C, ECF No. 31-4.

On September 23, 2022, Plaintiffs filed their TRO Motion, seeking an order compelling Defendants to "process and adjudicate" Plaintiffs' diversity visa applications by September 30, 2022 and/or "preserve unused visas for Plaintiffs through the pendency of litigation."  Pls.' TRO Mot. at 25.  Plaintiffs contend that if Defendants fail to complete adjudication of their visa petition by the September 30 deadline, they will "suffer significant hardship." On September 26, 2022,

Defendants filed their opposition to Plaintiffs' TRO Motion and Plaintiffs filed a reply in support of their TRO Motion on September 27, 2022.

## II.   LEGAL STANDARD

A temporary restraining order "is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Postal Police Officers Ass'n v. United States Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (quoting *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).  An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief. *See, e.g.*, *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011) (applying preliminary injunction standard to district court decision denying motion for TRO and preliminary injunction); *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (articulating TRO elements based on preliminary injunction case law).

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (internal quotation marks omitted)).  Plaintiff seeking preliminary injunctive relief "must establish [1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (internal quotation marks omitted)).  When seeking such relief, "the movant has the burden to show that all

four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)) (internal quotation marks omitted). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis*, 571 F.3d at 1291. Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291–92.

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In light of this ambiguity, the Court shall consider each of the preliminary injunction factors and shall only evaluate the proper weight to accord the likelihood of success if the Court finds that its relative weight would affect the outcome.

## III.   DISCUSSION

For the reasons set forth below, the Court concludes that Plaintiffs have not carried their burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of the equities and the public interest tilt in their favor. Accordingly, the Court **DENIES** Plaintiffs' [31] Motion for a Temporary Restraining Order.

**A.  Likelihood of Success on the Merits**

First, in order to receive a TRO, the moving "party must show, among other things, 'a substantial likelihood of success on the merits.'"  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)).  The D.C. Circuit has identified a "likelihood of success on the merits" as the "most important factor" for courts to consider when contemplating a motion for preliminary injunctive relief.  *Aamer*, 742 F.3d at 1038.

**1.  Unlawfully Withheld**

The Court first addresses Plaintiffs' claim that Defendants have unlawfully withheld action on their diversity visas under the APA and Mandamus Act.  Pls.' TRO Mot. at 14–15.  The APA authorizes courts to "compel agency action unlawfully withheld[.]"  *Id.* § 706(1).  Section 706(1) "empowers a court to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (internal citations and quotation marks omitted).  Similarly, mandamus relief cannot be used to "compel or control a duty in the discharge of which by law [a federal officer] is given discretion" and is only appropriate where the defendant official owes the petitioner a clear and nondiscretionary duty.  *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78 (1925); *see also Heckler v. Ringer,* 466 U.S. 602, 616 (1984).

Plaintiffs contend that 8 U.S.C. § 1202(b) imposes on the government a "non-discretionary" duty to adjudicate *their* diversity visa applications.  Pls.' TRO Mot. at 22.  Section 1202(b) provides: "All immigrant visa applications shall be reviewed and adjudicated by a consular officer."  Plaintiffs cite no authority supporting their contention that Defendants have a non-discretionary, mandatory duty to complete its review of *their* particular visa applications by the fiscal year deadline. *See, e.g.*, *Dehghanighanatghestani*, 2022 WL 4379061, at *5; *Pushkar v.*

*Blinken*, Civ. Action No. 21-2297 (CKK), 2021 WL 4318116, at *10 (D.D.C. Sept. 23, 2021). In

*Pushkar*, the Court addressed the decision by another court in this jurisdiction that held that

§ 1202(b) "imposes a nondiscretionary duty on Defendants to adjudicate diversity visas[.]" 2021

WL 4318116, at *10 (citing *Filazapovich*, 2021 WL 4127726, at *17). But, in that case, the

plaintiffs challenged not only the government's failure to adjudicate their individual visa petitions,

but also general policies that halted all diversity processing at the beginning of FY2021. As with

the plaintiff in *Pushkar*, Plaintiffs here makes no such challenge.[4]

Plaintiffs also cite the preamble of 8 U.S.C. § 1571 as the source of a purported non-

discretionary duty to adjudicate visas. Pls.' TRO Mot. at 15. That section provides: "It is the sense

of Congress that the processing of an immigration benefit application be completed no later than

180 days after the initial filing of the application, except that a petition for a nonimmigrant visa

under section 1184(c) of this title should be processed not later than 30 days after the filing of the

petition." 8 U.S.C. § 1571. This argument is unpersuasive. First, a number of other courts have

concluded that § 1571 does not apply to the processing of immigration benefits by State

Department consular officers. *Arab v. Blinken*, --- F. Supp. 3d ---, 2022 WL 1184551, at *8

(D.D.C. Apr. 21, 2022) (citing *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at

*2 n.2 (D.D.C. Feb. 16, 2022) (questioning whether 8 U.S.C. § 1571(b) applies to visa cases

alleging unreasonable delay in processing by consular officials at the State Department); *El Centro

Reg'l Med. Ctr. v. Blinken*, No. 21-CV-00361-DMS-BDD, 2021 WL 3141205, at *4 & n.2 (S.D.

Cal. July 26, 2021) ("[T]he plain text of § 1571 indicates that it applies to the processing of

immigrant benefit applications by USCIS, not consular officials at the State Department.")).

---

[4] Although Plaintiffs' Complaint challenges certain State Department policies pertaining to the
scheduling of interviews, Plaintiffs concede that these policies are "not at issue for Plaintiffs'
motion for a temporary restraining order." Pls.' Reply at 1.

Moreover, Plaintiffs cite no legal authority (and the Court has identified none) suggesting that such "sense of Congress" language imposes a mandatory duty to adjudicate diversity visas within this specified time period.  Rather, the weight of legal authority in this jurisdiction observes that Congress has given agencies "wide discretion" in the area of immigration processing, which this "sense of Congress" language in the preamble to § 1571 does not alter.  *See, e.g.*, *Arab*, 2022 WL 1184551, at *7–8; *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (Congress has given "agencies wide discretion in the area of immigration processing").  In sum, Plaintiffs have failed to demonstrate that § 1571 imposes a mandatory, non-discretionary duty to adjudicate their diversity visa petitions within a particular time frame.

Next, Plaintiffs rely on 22 C.F.R. § 41.121(a) for the proposition that "consular officers" *must* "either issue or refuse a completed visa[.]" Pls.' TRO Mot. at 15.  That regulation specifies: "[W]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law." 22 C.F.R. § 41.121(a).  It is unclear to the Court what "non-discretionary duty" purportedly imposed by this regulation has been "unlawfully withheld."  Plaintiffs themselves indicate that after their interview, their applications were "refused" under INA § 221(g)—in other words that the consular officer took the precise action directed by the regulation.

Finally, Plaintiffs point to 22 C.F.R. § 40.6 as the source of a non-discretionary agency duty.  This argument also fails.  That regulation  provides that  "[a] visa can be refused only upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.   Again, Plaintiffs fail to demonstrate how this provision compels Defendants to adjudicate any diversity visa petition within a specified period.

In sum, Plaintiffs here have cited no authority supporting their contention that Defendants have a non-discretionary, mandatory duty to complete adjudication of *their* particular visa applications by the fiscal year deadline. *See, e.g.*, *Nasab v. Blinken*, Civil Action No. 1:22-cv-02084 (CJN), 2022 WL 4473922, at *1 (D.D.C. Sept. 26, 2022); *Dehghanighanatghestani*, 2022 WL 4379061, at *5; *Zarei v. Blinken*, Civ. A. No. 21-2102 (CJN), 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021); *Pushkar v*, 2021 WL 4318116, at *10.  Notably, unlike other diversity visa plaintiffs with pending cases in this jurisdiction, Plaintiffs were scheduled for and attended an interview with a consular officer, who refused their visas under INA § 221(g).  They have cited no provision compelling the State Department to take any further adjudicative steps as to their diversity visas within a certain time period.  Accordingly, Plaintiffs have not carried their burden of demonstrating a substantial likelihood of success on the merits of their claims that Defendants have unlawfully withheld action on their diversity visa applications under the APA or Mandamus Act.

### 2.  Unreasonably Delayed

The bulk of Plaintiffs' TRO Motion focuses on their claim that Defendants have unreasonably delayed processing their visa application.  Pls.' TRO Mot. at 16–21.  The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  If agencies fail to do so, courts may "compel agency action . . . unreasonably delayed."  *Id.* § 706(1).  To determine whether Plaintiffs are likely to succeed on their claim that Defendants' adjudication of their diversity visa applications is "unreasonably delayed," the Court applies the six factors laid out by the D.C. Circuit in *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1)  the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (applying *TRAC* factors to claim for mandamus relief).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

a. *TRAC* Factor 4

The D.C. Circuit has emphasized the "importance of competing priorities in assessing the reasonableness of an administrative delay."  *Id.* at 1100 (internal quotation marks omitted).  It therefore has refused to grant relief—even where all other *TRAC* factors favored relief— where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *see also Xiaobing Liu v. Blinken*, --- F. Supp. 3d ---, 2021 WL 2514692, at *7 (D.D.C.

June 18, 2021) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, Civil Action No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) ("To grant Plaintiff priority would push those individuals further back in line when the only difference between them is that plaintiff has brought a federal lawsuit." (internal quotation marks and citations omitted)).  Courts in this jurisdiction routinely decline to grant relief that would place one prospective visa applicant ahead of others.  *See, e.g.*, *Xiaobing Liu*, 2021 WL 2514692, at *7; *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Verma*, 2020 WL 7495286, at *9.

Defendants contend that granting Plaintiffs the relief they seek in their TRO motion would merely "move their visa case to the front, displacing other noncitizens" awaiting adjudication of their petitions. Defs.' Opp'n at 34.  In other words, expediting review of Plaintiff's application would "merely direct government resources" away from the adjudication of other visa applications.  *Ghadami v. Dep't of Homeland Sec.*, No. 19-00397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020).  Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *In re Barr*, 930 F.2d at 76.  Based on similar circumstances, this Court has concluded that this *TRAC* factor weighs "heavily" in favor of Defendants; *Dehghanighanatghestani,* 2022 WL 4379061, at *7; *Pushkar*, 2021 WL 4318116, at *7.

Plaintiffs contend that "expediting" action on their visa petitions would have a "*de minimis*" effect on agency resources and priorities.  Pls.' TRO Mot. at 20.  They contend only that the State Department has "announced their dedication to issuing as many DV interviews as possible."  *Id.*  Besides the fact that Plaintiffs *have already received an interview*, they make *no* effort to demonstrate how granting the relief they seek would not simply move their applications

to the head of the processing queue, to the detriment of other non-citizens.  As such, this factor weighs heavily in favor of Defendants and Plaintiffs are not likely to show likelihood of success on the merits as to the fourth *TRAC* factor.

      b.  <u>*TRAC* Factors 1 and 2</u>

The first and second *TRAC* factors require the Court to consider whether a "rule of reason" governs the time agencies take to make decisions and whether a "statutory timeline" supplies content for the "rule of reason" inquiry.  *TRAC*, 750 F.2d at 80.  Courts "typically consider [the first and second factors] together."  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020).  Plaintiffs have not demonstrated a substantial likelihood that the first factor weighs in their favor.  "Whether the State Department has a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'"  *Id.* (quoting *Mashpee*, 336 F.3d at 1102).

Although conceding that Defendants have a "rule of reason" guiding their adjudication of diversity visa applications, Plaintiffs claim that Defendants "are not adhering" to their rule of reason, and that the alleged "delay" in this case was "exacerbated" by scheduling Plaintiffs' interview "out of order."  Pls.' TRO Mot. at 17.  However, Plaintiffs cite no evidence or other legal authority for this proposition.  And, more importantly, Plaintiffs have not shown how any alleged "delay" in scheduling their interview has affected the current status of their diversity visa application.  Plaintiffs also appear to suggest that the consular office in Sudan has prioritized other types of visa applications; but again, they fail to cite any authority or provide any argument showing how this claim (even if true) has at all affected their applications or how it fails to abide

by a "rule of reason."  On the other hand, Defendants have explained that the order in which diversity visa petitions are adjudicated turns on, among other things, the priority number of the particular applicant, whether he was "documentarily qualified," and the conditions at the consulate where the selectee's application would be processed.  *See* Miles Decl. ¶¶ 10, ECF No. 11-2; *see also Gjoci*, 2021 WL 3912143, at *13.  Plaintiffs have provided no persuasive arguments or facts to suggest that Defendants' alleged "delay" in processing their visa applications is contrary to a rule a reason.

As to *TRAC* Factor 2, other courts in this jurisdiction have concluded that the INA "provides a clear indication of the speed with which it expects the agency to proceed in processing diversity lottery selectees' visa applications, which supplies content for the *TRAC* rule of reason." *Gomez I*, 485 F. Supp. 3d at 196 (internal quotation marks and citations omitted); *see also Filazapovich*, 2021 WL 4127726, at *18.  The court in *Gomez I* reasoned that § 1154 "sets an absolute, unyielding deadline by which selectees must receive their visas: 'Aliens who qualify, through random selection, for a visa under section 1153(c) of this title shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.'" 485 F. Supp. 3d at 196 (quoting 8 U.S.C. § 1154(a)(1)(I)(ii)(II)).  As in *Gomez I*, Defendants here argue that this provision does not expressly require the State Department to conclude processing diversity visas by that date; it speaks only to the time period during which selectees are eligible to obtain a visa (upon completion of all necessary prerequisites).  *See* Defs.' Opp'n at 30–32; *Gomez I*, 485 F. Supp. 3d at 196.  But the court in *Gomez I* pointed out that the *TRAC* factor 2 inquiry may be satisfied not only by "an express timetable," but instead by "any other indication [ ] of speed." *Gomez I*, 485 F. Supp. 3d at 196 (citing *TRAC*, 750 F.2d at 80).  The *Gomez I* court concluded that "'[t]he specificity and relative brevity' of the September 30 deadline manifests Congress's intent

15

that the State Department undertake good-faith efforts to ensure that diversity visas are processed and issued before the deadline." *Id.* (quoting *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012)).

Although the September 30 deadline to issue diversity visas suggests the "speed" at which Congress intended these visas to be processed, the INA does not impose any obligation on Defendants to process *all* diversity visas by the end of the fiscal year. *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II) ("[A]liens who qualify, through random selection, for a visa shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."); *see Gomez I*, 485 F. Supp. 3d at 196 (observing that there is "no statutory requirement that every available diversity visa be issued each year").

Plaintiffs offer no contrary legal authority or argument. Instead, they point to 8 U.S.C. § 1571(b) for the proposition that Congress has "spoken generally that all immigrant visas . . . should be decided within 180 days." 8 U.S.C. § 1571(b). As previously noted, other courts have cast doubt on whether the language cited by Plaintiffs in § 1571(b) applies to State Department consular adjudications. *See supra* Section III(A)(1). But even if it does, courts have routinely concluded that this "sense of Congress" language does not compel a finding that immigration benefits adjudicated beyond 180 days are "unreasonably" delayed. *See, e.g.*, *Arab*, 2022 WL 1184551, at *8 ("[T]he thirty-month delay in this case is not long enough to tilt the first two *TRAC* factors in favor of plaintiff."); *Sarlak v. Pompeo*, No. 20-cv-35(BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

In sum, Plaintiffs have not demonstrated that they are likely to succeed on the merits of their unreasonable delay claim as to the first *TRAC* factor.  The second *TRAC* factor is a closer call; Congress has conveyed its intent that a certain number of diversity visa applications be processed by the end of the fiscal year.  However, there is plainly no statutory obligation requiring *all* visa applications to be processed, much less Plaintiffs' particular petitions. The Court finds that, at most, the second *TRAC* factor is evenly balanced.

        c.   <u>*TRAC* Factors 3 and 5</u>

The third and fifth factors are often considered together, and require the Court to consider the "nature and extent of interests prejudiced by delay" and whether "human health and welfare are at stake." *TRAC*, 750 F.3d at 80.

Plaintiffs may succeed on the merits of the fifth *TRAC* factor—that they will be prejudiced by the failure to obtain a visa by September 30.  *If* Defendants fail to process their visas by September 30 (that date has not yet passed), they will lose the opportunity to immigrate to the United States through this fiscal year's diversity visa program.  Plaintiffs contend that they "fac[e] disruption to education and career, financial hardship, and emotional distress" in the event their petitions are not adjudicated by September 30.  Pls.' TRO Mot. at 19.  Although the Court is sympathetic to these concerns, it must also be mindful that "'many others' face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammed v. Blinken*, 20-cv-3696 (TNM), 2021 WL 2866058, at *6 (D.D.C. July 8, 2021).  As noted above, an order compelling Defendants to process Plaintiffs' visa applications would merely move their applications ahead of other visa petitioners to the front of the queue—to the detriment of other visa applicants who may be facing similar (or even more dire) circumstances.

Although Plaintiffs have demonstrated that they may be prejudiced by Defendants' failure to complete the processing of their visa applications by the September 30 deadline, the Court is not persuaded that they have demonstrated that they are likely to succeed on the merits with respect to the consideration of "human health and welfare"—because it is not just these Plaintiffs' "health and welfare" that the Court can consider, but also that of others similarly-situated.

d. *TRAC* Factor 6

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. Plaintiffs argue that Defendants are "acting improperly" by delaying "final adjudication" without "providing a specific reason[.]" Pls.' TRO Mot. at 20. However, Plaintiffs themselves have provided the questionnaire seeking additional information from them—supporting a reasonable inference that the consular officer simply concluded that he or she lacked sufficient information to determine that they were eligible for visas. In addition, Defendants respond that a consular officer has adjudicated Plaintiffs' visa applications, which undermines Plaintiffs' allegation of bad faith. Defs.' Opp'n at 36 (citing *Liberty Fund*, 394 F. Supp. 2d at 119– 20 (holding "[t]he good faith of the agency in addressing the delay weighs against" a finding of unreasonable delay)). Plaintiffs offer no additional argument in response in their Reply. The Court concludes that Plaintiffs have failed to demonstrate a likelihood that this final *TRAC* factor weighs in their favor.

\*\*\*

In sum, Plaintiffs have not demonstrated a likelihood of success on the merits of their unreasonable delay claim. Although Plaintiffs may succeed in showing that Congress has indicated the "speed" by which it intended a specified number of diversity visas to be processed

and that they will be prejudiced if they fail to receive visas by September 30, 2022, they have failed to carry their burden of demonstrating a substantial likelihood of success as to the remaining *TRAC* factors. Most notably, the TRO they seek would interfere with Defendants' allocation of resources and ability to assess competing priorities (including the processing of thousands of visa applications) by moving their  applications to the front of the line, to the detriment of others. Plaintiffs have not demonstrated a likelihood of success that the *TRAC* factors favor them, warranting relief under the APA or the Mandamus Act.

****

For the reason set forth above, based upon the present record at this preliminary stage of litigation, Plaintiffs have not demonstrated that they are likely to succeed on the merits of their APA or Mandamus Act claims challenging Defendants' alleged unreasonably delayed and unlawfully withheld adjudication of their diversity visa petitions.

## B.  Irreparable Harm

The Court next considers whether Plaintiffs have demonstrated "irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). To constitute "irreparable harm," the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quotation omitted). And "[p]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original) (internal citations omitted).   "[P]ossibility of irreparable harm" is not enough. *Id.*  "[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and

present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (internal citation omitted).

Here, Plaintiffs argue that if their visas are not issued by September 30, 2022, they will lose their opportunity to obtain a diversity visa in this year's cycle. *See* Pls.' TRO Mot. at 24. However, compelling Defendants to complete the processing of their diversity visa applications would not necessarily result in their receipt of visas; that decision turns on a consular officer's finding that they are eligible for visas. *See Almaqrami*, 933 F.3d at 777 ("*[I]f he meets the criteria to obtain one,* the State Department shall issue him a diversity visa."). Here, a consular officer has already "refused" Plaintiffs' visa applications. Plaintiffs cannot unilaterally assess their own eligibility for visas; that is within the purview of a consular officer.

Plaintiffs' TRO Motion relies on the flawed premise that, by being selected in the diversity visa lottery and submitting the required documents, they are guaranteed a visa by the fiscal year deadline. Not so. They were instead given the opportunity to *apply* for one of approximately 55,000 available visas—as were the other 63,752 selectees (and their beneficiaries). "Because an injunction will not redress [their] alleged injuries, [plaintiffs'] claim that [they] will suffer irreparable harm in the absence of a preliminary injunction is tenuous at best." *Sierra Club v. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) (quoting *Navistar, Inc. v. EPA*, 2011 WL 3743732, at *3 (D.D.C. Aug. 25, 2011)). Accordingly, the Court finds that Plaintiffs have not carried their burden of establishing certain irreparable harm, absent the specific injunctive relief they seek from this Court.

## C.  Balance of Harms and Public Interest

"The final two factors the Court must consider when deciding whether to grant a [temporary restraining order] are the balance of harms and the public interest." *Sierra Club v. U.S.*

*Army Corps of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  Where, as here, the government is a party to the litigation, these two factors merge and are "one and the same, because the government's interest is the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).  "Although allowing challenged conduct to persist certainly may be harmful to a plaintiff and the public, harm can also flow from enjoining an activity, and the public may benefit most from permitting it to continue." *Sierra Club*, 990 F. Supp. 2d at 41.  Therefore, when "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

As to these final two factors, Plaintiffs address the "public interest" underlying the diversity visa program at large.  Pls.' TRO Mot. at 24.  They also contend that the relief they seek "comport[s]" with the State Department's policy to adjudicate as many diversity visas as possible. *Id.*  These arguments are not sufficient to tilt these TRO factors in Plaintiffs' favor.  Plaintiffs have not demonstrated that there is any "public interest" in expediting processing of *their* visa application, as opposed to any other diversity visa applications or any other immigrant visa applications.  Although the Court recognizes that Plaintiffs may lose their opportunity to immigrate to the United States based on their selection in the FY-2022 diversity visa lottery if the processing of their diversity visas is not completed, the Court is not persuaded that this tips the balance of harms and the public interest in Plaintiffs' favor.  Granting Plaintiff's requested relief would require Defendants to re-order their processing queue, potentially allowing Plaintiff to move ahead of other similar-situated visa applicants—who, in turn, may lose their opportunity to obtain a visa. The Court reiterates that the number of applicants eligible for a diversity visa for the 2022 fiscal far exceeds the number of available visas.  As previously noted, being selected in the diversity visa lottery *does* not guarantee applicants the right to obtain a visa.

Overall, the Court finds that Plaintiffs have not demonstrated that the balance of the harms and the public interest weigh in favor of their requested TRO.

## IV.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court concludes that Plaintiffs have failed to satisfy their burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of hardships and the public interest weigh in their favor. Accordingly, the Court **DENIES** Plaintiff's [31] Motion for a Temporary Restraining Order.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date:** September 28, 2022